I would like to focus my argument on the 404B arguments because I think that it relates significantly to the sufficiency of the evidence argument. I think basically my view of the record in this case is that because the evidence of guilt was circumstantial, thin, somewhat ambiguous, that the impact of the 404B evidence was far greater than it might otherwise have been. And it makes it a far more serious issue in this case, even though I think even in a case with more evidence of guilt, the 404B evidence here was probably more prejudicial than probative and would create a serious issue. But where the evidence of guilt is so equivocal, I think it creates a serious issue in this case in terms of its impact on the jury. The irony of dealing with 404B evidence is that the more it's needed, the more probative it is to weigh against unfair prejudice, so it kind of cuts both ways a little bit. Well, Your Honor, I think that that might be true in many cases and certainly is true in some of the cases that have been cited in the briefs by both sides. But I think in this case, the problem that I have and the problem that the Court should have is connecting the 404B evidence with the government's burden and what issues they were attempting to establish with the 404B evidence. I would point the Court back to the language of Mermonash that the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other act's evidence. That's the thing that I don't see here, either in the record below or in the brief to this Court. It has never been made clear by the government what evidential hypothesis is proved or would tend to be proved by the 404B evidence in this case. Although the 404B evidence involved drugs, it was different in many respects from any of the transactions that occurred in this case. And I don't want to downplay the reliability element here. The government's brief asserts that we concede reliability, we don't, which I think is another problem for this evidence. But even if it were reliable, the government never made a specific argument about what it tended to prove. And even in this Court, the government has not articulated what this evidence tends to prove other than proximity to bad events, bad people, the wrong sorts of activities. Of course, both pieces of 404B evidence were about searches. They were not convictions, so that the context of the events could not be presented. I mean, there was no information about how this came to happen, who actually owned what, who was charged with what, who was guilty of what. We don't have any of that in this record. We only have the searches, and the things that the searches produced were not similar to anything that happened in this case, except that they involved drugs. None of the drugs in the 404B evidence were in distribution quantities. It is not clear, they certainly didn't involve packages by mail, hiding drugs in different kinds of packaging. They weren't about distribution networks, they weren't about the co-conspirators in this case, they weren't about the locations in this case. I'm hearkening back to several of the other cases that this Court has decided what makes the circumstances similar. This case doesn't have any of those. The only factual similarity that the government has actually identified is the possible flushing of evidence. And one thing, I have to admit that I remain perplexed. The government keeps saying in its brief that it was cocaine that was flushed, so that it's like the cocaine in the package. In this case, I don't remember that being true. I can't find in the record where it says it was cocaine that was disposed of in the one search. And I don't think it's, I mean it may be true, but I don't think that there's evidence that it was. That search produced marijuana to the best of my recollection of what I've been able to look at in the record. So the types of drugs were different, the circumstances were different, the personnel was different, the whole context was different. So the relevance of this evidence, although both the government and the District Court kept reciting the test, you can use it for identity, common plan, et cetera, et cetera, et cetera, any particular evidence is used to show one or more of those items on a particular theory. Well, there's always the prejudice that flows from the idea that, well, this person's connected to drugs. But notwithstanding that, we have to apply a harmless error analysis that takes into account all the evidence in the record and the large quantities that were found in this case and the evidence that connected your client to the possession of those quantities. So could you talk a little bit about why this would not be harmless error? Well, okay, going back to the whole sufficiency of the evidence standards and drawing all the inferences in favor of the government and, you know, I think if you really rely on the most possibly positive for the government inferences, you might get there, but it's pretty equivocal. So what is it exactly that ties Mr. Williams to the conspiracy? And I'm just assuming that the conspiracy was to distribute the drugs in the package, although, you know, the government doesn't really make that clear, but we have to assume that that's what the idea was. So what ties Mr. Williams to this is the theft powder on his hands,  either that they were in the room at all, the documents with his name on them were in the room, or that one of the documents and or one of the documents had his address, although that evidence is equivocal because the address was actually the address of the place where the drugs had been delivered, and then there was a handwritten scrawl that said four, but that wouldn't have been the address of the apartment that he was in because it had actually a different street number, so it was sort of maybe kind of the address, but it was really the address of a different apartment. And then there was the snake pendant in the bedroom. And there was also drug paraphernalia, scales, that sort of thing. Well, none of that ties Mr. Williams to the location unless you first tie him to some control over the location because all of that stuff was hidden, you know, it was put away, it was in the ceiling, it was in the kitchen cupboards, except for the context of the box that had been delivered, which was all over the place, but you can't connect him to the hidden items unless he has some connection to the apartment, other than just a casual visitor. So it's really crucial for the government's case to tie him to some kind of control, residence, something with the apartment, and that's why those two pieces of evidence are crucial to proving guilt, that the documents have some significance and that the snake pendant has some significance. Because otherwise, all of the rest of the things, the ten cell phones, or however many it was, and the gun hidden above the ceiling, none of those serve to tie him to the distribution network unless he gets tied to the location first. And there was no fingerprint evidence of any kind, so we aren't tying anybody to anything with fingerprints in this case. So, you know, that is the evidence of guilt, which the 404B evidence, then, may seem more appealing to the trier of fact, perhaps. And I think that when the evidence of guilt is that ambiguous, that the 404B evidence must have a significant effect on the fact finder, especially when the 404B evidence itself is so equivocal, so tangentially tied to the evidence in this case, and so potentially unreliable. I think that it's very, it's clear that the prejudicial effect of this evidence should have outweighed its probative effect. I'd like to reserve some rebuttal unless the court has some questions. Thank you. Good morning, Your Honors. May it please the Court, my name is Craig Warner, and I represent the United States. I'll start at the same place that the appellant did with the Rule 404B evidence. And I don't really understand the allegation that the rationale for this evidence hasn't been clearly explained. Well, there's sort of a laundry list. To prove intent, knowledge, identity, and absence of mistake or accident, that's what the court said. But how does it do that in this case? Well, I think there's a laundry list, Your Honor, because so many grounds were appropriate. But the only real issue in this case was, I think, correctly identified by opposing counsel, which is there's a lot of illegal drugs for distribution. There are a bunch of people. Who's connected to it is the question here. But the fact that something was flushed down a toilet during a probation search a few years ago, I just don't see how that has any particular bearing on what happened here. Well, I'll start there then. Because I think the striking resemblance between the facts that were observed by the probation officer in the probation search and the facts that were observed by the officers in the instant case when they searched the apartment on March 30, 2009, it's that striking resemblance that is significant here. What's the striking resemblance? It seems to me that flushing drugs down the toilet when the police are on their way is a pretty standard thing that anybody would do. It may well be standard, Your Honor, but that doesn't change the fact that it is a response that the defendant has exhibited, that the appellant has exhibited in multiple occasions. What was the evidence that the appellant is the one that flushed the stuff down in this case? Well, Your Honor, there's only three individuals in the apartment. So any one of them could have done it? Well, that's not actually true, Your Honor, because that takes us back to the issue of the theft detection powder. It could have been two of them. It could have been two of them, not three. There are only two individuals with theft detection powder on their hands, and the evidence on the record is very clear as to how that theft detection powder works. It's a very strong inference that only those two individuals actually handled the narcotics. So what difference does it make beyond that, that those two individuals handled the narcotics and that this defendant is tied to the apartment? I guess I really just don't see the point of it other than just piling on something that's prejudicial. I just don't see the point of the prior evidence. Well, we have to recall, I think, Your Honor, that the argument at trial from Mr. Williams was that he didn't know what was in the package, that he had nothing to do with it, that he had never touched the drugs, that he didn't know what the contents were. He took the stand and stated that the only time that he touched the narcotics was when Christopher Mejia, the individual who was not charged in this case, handed him a plastic bag and said, essentially, do you know what this is? Where did this come from? So we have this story from Mr. Williams that essentially he had nothing to do with the parcel, never handled the drugs, and against that we have a history on his part of being associated with narcotics and police come into the apartment under legitimate auspices and suddenly the narcotics have disappeared. The rationale is that the defendant, the appellant, Mr. Williams, has a common response to facing that situation, the entry of police into an apartment that he is in, and it's to destroy the narcotics. But I really think that common scheme and plan with respect to the particulars of that is the least of, I think it's a legitimate grounds for 404B, but I think it's the least of them. I would look more directly at United States v. Hedgewood, which is referenced in United States v. Vaux, both cases of this court, and the direct quote from United States v. Hedgewood, defense theory of trial was that the defendant did not know what was in the package. Evidence of prior involvement with drugs is relevant to prove absence of mistake or accident in this circumstance. Now, I would argue that that same background, that same rationale applies to intent and identity of the individual who is intended to receive the package. But regardless of that, that quote from United States v. Hedgewood exactly describes Mr. Williams, the appellant's argument to the jury in the instant case. Very explicitly, Mr. Williams took a stand and essentially said this, and his counsel argued this, he did not know what was in the package. That was his argument to the jury. And there's very clear language in a ruling from this court in United States v. Hedgewood that says explicitly, when that's the defense argument with respect to the contents of a parcel that contained drugs or sham drugs, evidence of prior involvement with drugs is relevant to prove that, in fact, this was not an unfortunate mistake or accident. And with respect to the 2006 probation search, there's only an inference, as I read what we have in front of us, that what was flushed was cocaine instead of marijuana because there was cocaine residue found on some of the surfaces, I gather, in the bathroom. That's correct, Your Honor. And there were also plastic bags found in the apartment that strongly resembled the exact physical situation that was found in the apartment in the instant case. It is really a striking resemblance. I mean, in both situations, you have police coming in the door after banging on the door and not getting a response from Mr. Williams. And in both situations, the police enter to find opened plastic bags near the toilet. And I think it's legitimate to say that there's a common scheme or plan on the part of the appellant there that when police arrive, he rushes to dispose of the narcotics. Certainly that's a legitimate inference. But I think I need to emphasize that that's not a necessary inference because this Court has said that merely by the fact that of, quote, prior involvement with drugs, plainly stated, establishes that makes it relevant to prove absence of mistake or accident when a defendant, an appellant, is claiming that he did not know what was in a parcel that contained drugs or shambles. And that is precisely the situation that the jury faced here. Mr. Williams claimed he didn't know what was in the parcel. His history of involvement with narcotics, including reliable incidents, which was established by testimony by a probation officer and a police officer, established that this was not a mistake, it was not an accident. It undermined his explicitly stated argument that he didn't know what was in the parcel. And this Court has addressed that exact situation in Hedgewood. I'd like, if I may, to move. Let me ask you this. Let's assume that we disagree with you as to the prejudicial impact, assuming some slight relevancy to this 404B evidence. Is the juror positioned, then, that there is insufficient evidence to persuade a rational juror based on the other evidence that was not 404B evidence? No, Your Honor, and thank you for bringing that up. That was where I was about to go. Respecting the sufficiency of the evidence generally, I think it's important to state, before I even delve into it, that pursuant to the controlling case law here at United States v. McDaniel, from the Supreme Court in the United States v. Nevels, from this Court, the question is whether the jury's construction of guilt is plausibly consistent with the evidence. And the answer to that question is clearly yes. The jury in this case at trial could have rationally inferred guilt from its choice of at least five substantial grounds, and only one of those involves the 404B. I'd like to take the first three and then skip to the last, since we've discussed 404B. The first factor was the theft detection powder on the appellant's hands, indicating his personal handling of the sham drugs. The second was his presence as only one of three persons in a very small apartment at the precise moment that the drug parcel was opened. The third was the documents indicating his personal control over both the apartment where the drug parcel was opened and the apartment where it was originally delivered. Then we have the 404B evidence. And finally, we have the appellant's own discreditable, factually, in fact, factually impossible testimony that I've already referenced somewhat obliquely. If I had to pick one factor here that was most predominant, it would be the theft detection powder. And I think it's necessary for me to emphasize the factual background of that theft detection powder and what an individual had to do in order to actually access it and get it on the hands. It was not an easy thing to do. And the appellant had only about 15 minutes from the time that that parcel arrived at its final destination at the apartment to the time that police came in the door. During that time, in order to access that theft detection powder and get it on his hands, he had to open the outer parcel, remove all of the items, pick one of the items, an Easter egg decorating kit box, open that second box, remove its contents, and finally reach in and actually obtain the plastic bags that contained the powder. By which point he would have known it wasn't really an Easter egg decorating kit. I assume your point. My point is, Your Honor, that it would take a substantial degree of thrift and prompt determination in order to quickly open the parcel and open that particular box, take out its legitimate contents, reach in and pull out the plastic bag. It's hard to imagine that that was an accident, that the appellant had some compelling interest to obtain the contents of an Easter egg decorating kit box within 15 minutes of the parcel arriving at that apartment. The jury could rationally infer from that a determined and swift effort by Williams to secure and access the plastic bags of drugs. In light of all the facts, I think that's the most rational inference that the jury could have determined. But I should reemphasize that it doesn't need to be the most rational in the eyes of this court. It needs to be rational. And that it clearly was. It's a rational inference on the part of the jury that by virtue of the fact that the defendant had those plastic bags of narcotics, that he was determined, in fact, to do so. When the theft detection powder evidence is combined with the specifics of Mr. Williams' presence in the apartment at that crucial moment of actually obtaining the plastic bags of narcotics from the box, it becomes even more significant. I note that this court has placed great emphasis in the past on the particular nature of the timing and circumstances of when an appellant or a defendant is present during the operations of a drug trafficking organization. In the United States v. Mesa Farias, this court concluded that a jury could reasonably infer that it would be unlikely that drug dealers, quote, would have allowed an outsider to drive a car loaded with cocaine and heroin or sleep in an apartment containing drug paraphernalia and substantial amounts of cash. By virtue of the unlikelihood of a drug trafficking organization allowing an outsider to do those things, a jury could rationally infer that an appellant was involved. Likewise, in the United States v. Miguel Jimenez, this court said, quote, it is highly unlikely that Miguel would be sitting in Ruelas' truck, that's his co-defendant, with a 10-pound box of cocaine at his feet if he were merely tagging along as a friend or was present for some other purely innocuous reason. And I think that's directly applicable here. This was the crucial moment of this drug trafficking conspiracy when the narcotics were to be received from the U.S. mails. I thought it was FedEx. Thank you for correcting me, but I think you're correct there. I don't think it affects the logical analysis. Opening the box and obtaining this very valuable cargo, this is a moment when they're vulnerable to police, when they're vulnerable to other drug traffickers, and this court has said in similar circumstances repeatedly that the presence of a defendant at moments like that is highly significant. I think those two factors alone, the fact that the defendant was present at that crucial moment with only two other individuals in a very small apartment, and the fact that it was clearly established by the evidence that he was one of only two persons who actually handled the sham narcotics within 15 minutes of reaching in, this was, these two factors were by themselves sufficient for the jury to reach a rational verdict of guilt, as it turned out with or without the Rule 404B evidence, although it was not clear when that ruling was made that that would in fact be the case. The evidence had not yet been presented. I see my time has expired. Thank you, Your Honor. Counsel, you have some time remaining. Thank you, Your Honor. Well, in response to the government's argument, I want to make a couple of points. One is I believe Judge Allerkind asked how we know that it was the defendant that flushed the drugs down the toilet in this case, and I would note that that's an issue about the 404B evidence as well, because the apartment search was actually his girlfriend's apartment and his girlfriend was present at the time of the search. That doesn't affect the traffic stop evidence, though. No, no, it doesn't. No, but the government's argument that the striking similarity is between the apartment search and the current situation with the drugs flushed down the toilet, and in both situations there's no evidence that he was the one who did that. So if that's the link between the cases, it's ambiguous on both ends. Is it critical that the government be able to show that in either instance that Williams was the one who flushed the drugs personally? I mean, he is present in a small confined area where drugs are being flushed. Does it make a difference? I don't think it makes a difference on the evidence of guilt in the current case, but in trying to make the 404B evidence relevant to what he may or may not have done in this case, I think it is relevant, because the 404B evidence is so tenuously related otherwise that unless you find some way of making it relevant, similar, showing a common plan or scheme, something to this case, then I think it does matter, because the relevance is the similarity is fairly low. Your argument has been directed almost entirely at the 2006 probation search evidence, but there was also the traffic stop evidence. Was that also improper in your view, and if it was proper, doesn't it reduce the potential prejudice from the 2006 evidence? I'm sorry that I created the impression that I was arguing only about the one. I think that the objections go equally to both, and I think that the vehicle stop search had even less similarity to the current case, except that the drug involved there was cocaine, although I believe all the cocaine found on his person was crack cocaine, and this was cocaine powder. What is your response to the government's argument that your client said, hey, I'm just an innocent bystander. I'm just as shocked as anyone that this FedEx package contained drugs. Why isn't the government permitted to introduce evidence of prior involvement with drugs generally to show the unlikelihood that he really was wanting to decorate Easter eggs? Well, this court has decided a lot of cases on this issue about whether evidence of prior involvement with drugs is relevant to current charges on drug issues, and there's a very, very fine and difficult line to be drawn, and although the government says prior involvement with drugs is always relevant, that isn't this court's position. There has to be more than being twice in the vicinity of drugs to make it admissible for a 4B evidence, and I think that's clear. From the traffic stop, it was more than vicinity. Certainly. I'm just saying that the standard is not any drug involvement in the past is admissible for any drug case now. The traffic stop, I have even more difficulty seeing what fact it proves in this case, because it didn't involve distribution quantities of drugs. It didn't involve disposing of drugs before the police arrived. This case involved ecstasy and heroin, which were not involved in either of the 404B. What kind of drug paraphernalia was found in the car? There was a gun. I think there were scales. There was various drug paraphernalia in the car, but there were also two other people present. Only scales? Do you have a crack pipe? No, I don't think there was a crack pipe. I think there were scales. There might have been plastic bags. There were two other people present. There was a gun, four cell phones, a digital scale with white residue on it, and a sandwich bag full of marijuana. Thank you, Your Honor, and two other people. I think most of those things were in the back seat of the car and Mr. Williams was driving. He did have cocaine on his person at the stop. That was crack? Yes, and it was in personal use quantities, not distribution quantities. I don't think the government ever tried to argue that it was distribution quantities. He has that prior connection with drugs, but unless all drug involvement in the past is relevant, is admissible under 404B, which this Court has said it is not, there has to be some connection to proving a fact. I think the closest it comes to proving a fact is that he knew what cocaine was. I just need to quickly detour into the theft detection powder on this same issue, because while the government says the theft detection powder proves that he expeditiously opened the box, it doesn't really prove that. And that he held the bags, that's what it proves, clearly. And while I'm not contesting the argument that the jury could have concluded that the theft detection powder proved he knew what was in the box, it's not unequivocal, because it could also mean that he didn't know what the heck he was doing and didn't have the sense not to handle the bags. So there isn't only one inference that could be drawn there. The only reason that matters is because we're weighing the quantities of evidence to look at the 404B. Thank you, Counsel. The case just argued is submitted.
judges: Alarcon, Graber, Bybee